April 10, 1979

## 79-22 MEMORANDUM OPINION FOR THE DIRECTOR, OFFICE OF PERSONNEL MANAGEMENT

### Veterans Preference Act (5 U.S.C. §§ 2108, 3309–3320)—Hiring Procedures for Attorneys— Excepted Service—Preference Hiring of Eligible Veterans

This responds to your request for our opinion whether the Department of Justice attorney-hiring procedures give effect to the Veterans Preference Act. 5 U.S.C. §§ 2108, 3309–3320. You also ask whether the Office of Personnel Management (OPM)[1] may prescribe an examination procedure (particularly a numerical rating system) for the selection of attorneys. For the outlined reasons, we conclude: first, that this Department's attorney-hiring practices take into account fully the preferences that Congress afforded veterans; second, that OPM is barred by its appropriation legislation from imposing a rating or other examination system on the hiring of attorneys within the executive branch.

In the competitive civil service, known also as the classified civil service, veterans preference is implemented by adding a designated number of points to an eligible veteran's examination score. Section 3 of the 1944 Veterans Preference Act, codified at 5 U.S.C. § 3309, prescribes the following point system in the competitive service:

A preference eligible receiving a passing grade in an examination for entrance into the competitive service is entitled to be assigned additional points above his earned rating, as follows—

---

[1] The Civil Service Reform Act of 1978, Pub. L. No. 95–454, 92 Stat. 1111 (1978), and Reorganization Plan No. 2 of 1978 (43 F.R. 36037) divided the functions of the Civil Service Commission between two new agencies—the Office of Personnel Management (OPM) and an independent Merit System Protection Board. Since the legislative history and Executive orders cited herein refer to the Civil Service Commission, we will use the terms "Commission" and "OPM" interchangeably.

(1) a preference eligible under section 2108(3)(c)–(G) of this title—10 points; and

(2) a preference eligible under section 2108(3)(A) of this title—5 points.

Section 2108 of title 5 defines a "preference eligible" as an honorably discharged veteran who served in the Armed Forces under the conditions set forth in that section. Certain disabled veterans and, in some cases, their relatives or survivors are entitled to the 10-point preference provided by § 3309, while certain nondisabled veterans are entitled to a 5-point preference.

Although this point system was not mandated by statute until June 27, 1944, it had been implemented in the executive branch since March 3, 1923, pursuant to Executive Order No. 3801, as amended. The report of the Senate Civil Service Committee on the 1944 Veterans Preference Act states that:

Section 3 [of the Act] would enact into law the 10-point preference for service-connected disabled veterans and the 5-point preference for non-disabled veterans presently contained in civil-service rules. [S. Rept. 907, 78th Cong., 2d sess. p. 2 (1944).]

The 1944 Act merely gave legislative sanction to the then-existing point system.

Although § 3309 applies only to the competitive service, there is a suggestion in 5 U.S.C. § 3320 that such a system is required in the excepted service. This provision reads in pertinent part as follows:

The nominating or appointing authority shall select for appointment to each vacancy in the excepted service in the executive branch * * * from the qualified applicants in the same manner and under the same conditions required for the competitive service by sections 3308–3318 of this title.

Since the point system is required in the competitive service by § 3309, it would seem that the excepted service must also follow such a procedure. Upon closer scrutiny, however, this is not the case. Section 3320 in its present form results from Pub. L. No. 89–554, 80 Stat. 378, 422, which combined and restated for clarity §§ 9,[2] and 20 of the 1944 Veterans Preference Act. (Section 20 merely exempted the legislative and judicial branches, as well as advice and consent positions in the executive branch.)

The language of § 9 of the 1944 Act reads in pertinent part as follows:

In the unclassified Federal * * * civil service * * * the nominating or appointing officer or employing official shall make selection from the qualified applicants in accordance with the provisions of this act.

This language is less suggestive concerning a point system in the excepted service than the "clarifying" language of § 3320. Further, § 9 indicates an

---

[2] Section 9, first codified at 5 U.S.C. § 858, is now codified at 5 U.S.C. § 3320.

intent to require that employee preference be extended to those classes of preference eligibles listed in the Act. Section 2 of the 1944 Act provides in pertinent part that, with respect to applicants for Federal employment in the unclassified civil service as well as in the classified civil service, "preference shall be given" to preference eligibles. The method of implementing this preference was spelled out for the competitive service through the point system. However, the general direction of § 2, that a preference be granted to eligible veterans, is reflected in the language concerning application of the preference in the excepted service.

Section 3309's system was amended in 1953 to provide, *inter alia*, that preference points would be given only to those veterans receiving a passing score on an examination. 67 Stat. 581. Before this amendment the points were added to preference eligible scores if the points would bring the veterans up to the qualifying score. Significantly, as stated in the legislative history, the amendment would affect "the veteran in the competitive civil service system." S. Rept. 679, 83rd Cong., 1st sess. 1 (1953). The drafters of the Senate report apparently believed that the point system was not required in the excepted service.

Moreover, the essential distinction between the competitive and excepted service is that positions in the former are filled on the basis of competitive examinations while those in the latter are not. *See* 5 U.S.C. §§ 2102, 2103.[3] The Act contemplates continuation of the distinction. It makes reference to the unclassified service as well as the classified service. If examinations were required, it would eliminate the unclassified service. Therefore, the Veterans Preference Act's reference to unclassified service would be inaccurate if it meant that all positions filled pursuant to the Act should be subject to examination. Since there was no intent to erase this distinction and since the language of the Act itself requires that points be added only to an applicant's earned rating resulting from an "examination,"[4] we must conclude that the point system is not required in the unclassified service.

In considering the questions whether the Department's attorney-hiring procedure gives effect to the Veterans Preference Act and whether OPM could require that the Department implement a numerical rating system for attorneys, we now turn to a historical examination of attorney-hiring and veterans preference.

## I. The History of Attorney-Hiring and Veterans Preference Since 1941

President Franklin D. Roosevelt, by Executive Order No. 8044 (1939),

---

[3] These provisions also resulted from Pub. L. No. 89-554, *supra.* They merely carried forward, without substantive change, their predecessor provisions (22 Stat. 403, 406 (1883)) with respect to the competitive service. The earlier provisions noted this key distinction between the competitive and noncompetitive service.

[4] It might be suggested that a numerical rating system does not constitute an examination. However, we conclude in the discussion that follows that it does.

appointed a committee to study and make recommendations on, *inter alia*, how civil service procedures should apply to attorneys. In February 1941, that committee submitted its report entitled *Report of the President's Committee on Civil Service Improvement,* H. Doc. 118, 77th Cong., 1st sess. (1941). The report presented two principal views—Plan A and Plan B—on attorney-selection procedures.[5] Plan B recommended, at least in the case of inexperienced attorneys, that they be examined and rated competitively. Taking a contrary view, the authors of Plan A reasoned:

> [I]t seems to us highly unwise to force the unique problem of the attorney positions into any general pattern simply for the sake of uniformity. Wise administration of the civil service, as of other organizations, may often indicate the need for flexibility and *ad hoc* adjustments, even at the cost of uniformity and symmetry * * *.
>
> We therefore have considered and presented our recommendations on the assumption that the attorney positions present a unique problem in the professional service, which must be solved individually rather than by application of a general formula. [H. Doc. 118, *supra,* at 32–33.]

Plan A's proponents therefore recommended against a rating system for attorneys. They also objected to the application to attorneys of the competitive service procedure of certifying three applicants for each position to the appointing officer. *See* 5 U.S.C. § 3318. It was stated in this connection:

> We feel that any mechanical ranking and certification would operate in an undesirably arbitrary manner, that the superior officer who is responsible for the appointee's work should have more voice in his selection, and that *no principle of civil service or wise administration requires that there be an assumption of absolute accuracy in rating the candidates all of whom by definition are qualified to do legal work of a high order.* [H. Doc. 118, *supra,* at 38.] [Emphasis added.]

President Roosevelt in 1941 adopted Plan A in Executive Order No. 8743. *See* 5 U.S.C. § 3301 note. The order directed that all attorney positions be brought into the competitive service and created a Board of Legal Examiners, which was to establish rules and procedures for attorney selection in the Federal Government. Subsection 3(d) set forth the functions of the Board as follows:

> The Board, in consultation with the Civil Service Commission, shall determine the regulations and procedures under this section governing the recruitment and examination of applicants for attorney positions, and the selection, appointment, promotion, and transfer of attorneys in the classified service.

---

[5] Urging Plan A were Justice Reed, the committee's chairman, Justice Frankfurter, Attorney General Jackson, and Mr. Gano Dunn. Justice McReynolds, Leonard D. White, and General Robert E. Wood, urged Plan B.

The order also directed the Commission to establish a register of eligibles from which attorney positions were to be filled. And, § 3(f) provided that:

registers shall not be ranked according to the ratings received by the eligibles, except that persons entitled to veterans' preference * * * shall be appropriately designated thereon.

Thus, while an examining procedure was established to determine minimum attorney qualifications, a rating system was prohibited.

"The examination consisted of a written test, an evaluation of the applicant's records, and oral examinations before the state and local boards." U.S. Board of Legal Examiners, *Report to the President, 1941-1944,* p. 34. The report further stated at p. 36:

Numerical grades were not assigned upon the examination as a whole, but only upon the written test. The applicants who were recommended for inclusion upon the register were, however, given ratings of "Outstanding," "Excellent," "Good," and "Fair" on the basis of recommendations from the various examining boards. These descriptive ratings were shown upon the register list. The list also showed the length of professional experience of each individual included.

The examination score determined who would be placed on the register of eligibles. The register was distributed to all government agencies and, as appointing agencies, they were given "unrestricted choice from among the eligibles" with respect to beginning attorney positions. *Id.* at 37. *See also, Hearing on H.R. 1025, a bill to create a Board of Legal Examiners in the Civil Service Commission, before a subcommittee of the Senate Committee on Civil Service,* 78th Cong., 1st sess., at 57-59 (1943). But at the same time the register directed the attention of appointing officers to their duty to prefer preference eligibles in making appointments. *Id.* at 47-48. However, no guidance was provided for the appointing officers to fulfill this duty, and thus veterans preference points were added to the written examination score as a third of the total examining process. Moreover, the preference points were used only in the determination of the applicants' placement on the register. Consequently, the points clearly benefitted only those preference eligibles who received marginal examination scores and needed the points to qualify for listing on the register. Preference points were not used in the most important aspect of the employment process— the actual appointment. Appointing agencies were merely instructed to "prefer" preference eligibles over other applicants. Preference at the appointing stage could only have been implemented by considering it as a positive factor in the employment decision.

The Board of Legal Examiners was destined to operate for but a short time. In 1942 the Senate proposed the following amendment to the Independent Offices Appropriation Act of 1943:

[N]o part of any appropriation in this act shall be available for the salaries and expenses of the Board of Legal Examiners created in the Civil Service Commission by Executive Order

144

No. 8743 of April 23, 1941. [88 CONGRESSIONAL RECORD 3822.]
However, this language was deleted as part of a House-Senate com-
promise. In lieu of the amendment, the appropriation available for the
board was limited to $80,000 "with the understanding that such authoriza-
tion [was] not to be regarded as giving permanent status to this activity
and that appropriations for future years [would] be dependent upon
passage by the Congress of substantive law authorizing a Board of Legal
Examiners." H. Rept. 2259, 77th Cong., 2d Sess. (1942); statement of
House Managers 88 CONGRESSIONAL RECORD 5541.

As the above-quoted language indicates, this restriction was sought by
those Members of Congress who believed that the Board should have been
created by legislation rather than by Executive order. Although such legis-
lation later passed the House (89 CONGRESSIONAL RECORD 3565), it
subsequently died in the Senate Civil Service Committee. See 90 CONGRES-
SIONAL RECORD 2659-60.

Whether the board created by Executive Order No. 8743 should be con-
tinued was debated in the legislative consideration of the Independent Of-
fices Appropriation Act of 1944. It is there made clear that the intent of
the restriction was to prohibit "any" civil service examination of
"lawyers." 90 CONGRESSIONAL RECORD 2659 (1944); see also 90 CON-
GRESSIONAL RECORD 2660-61. The prohibition was based largely on the
view that the Commission has no business in determining the "relative
qualifications" of lawyers. 90 CONGRESSIONAL RECORD 2661. The under-
lying premise was that the Commission was not competent to pass on their
professional qualifications. 90 CONGRESSIONAL RECORD 2661 (1944).[6]
The restriction thus became law. It reads as follows:

> [N]o part of any appropriation in this Act shall be available for
> the salaries and expenses of the Board of Legal Examiners
> created in the Civil Service Commission by Executive Order
> Numbered 8743 of April 23, 1941. [57 Stat. 173 (June 26, 1943)][7]

A virtually identical restriction has been included in each subsequent Com-
mission appropriation since 1944. The 1979 appropriation governing
OPM's present activities includes the following:

> No part of the appropriation herein made to the Civil Service
> Commission shall be available for the salaries and expenses of
> the Legal Examining Unit of the Commission, established pur-
> suant to Executive Order 9358 of July 1, 1943 [8 F.R. 9175], or

---

[6] Although it was suggested that a legal examining board for Executive branch attorney
positions be established in the Justice Department (90 CONGRESSIONAL RECORD 2661 (1944)),
this has never been done.

[7] This restriction placed attorney positions in a peculiar situation. They were, pursuant to
Exec. Order No. 8743, in the competitive service. However, because of the restriction the
Commission could not conduct attorney examinations. The restriction was included in each
subsequent Commission appropriation and finally, in 1947, President Truman, by Exec.
Order 9830, placed all attorney positions in the excepted service.

any·successor unit of like purpose. [Pub. L. No. 95–459, 95th Cong., 2d Sess. (1978), 92 Stat. 1007.][8]

Thus, it is plain that OPM may not, in light of the continuing appropriation restriction, require examinations for attorneys.[9] A rating system such as has been suggested for attorney-hiring is one form of an examination, and was frequently used to "examine" for attorney positions. This procedure is denominated an "unassembled examination."

> The unassembled examinations, long used for skilled-trades positions, were adopted for use in examinations for high-grade administrative and professional positions. In the unassembled examination the competitor does not take a written examination, but is rated instead on his knowledge and experience as evidenced by his education and by the positions he has previously held. [U.S. Civil Service Commission, *History of the Federal Civil Service: 1789 to the Present* (1941), at p. 77]

The Board of Legal Examiners itself recognized such examinations for attorney positions in the civil service. *U.S. Board of Legal Examiners Report, supra,* pp. 14, 27, and Appendix H. In fact, one phase of the Board's examining procedures—the evaluation of the applicant's records—was an unassembled examination. Therefore, an attorney-rating system amounts to a civil service examination and for that reason may not be required by OPM.

The participants in the debate on the 1944 appropriations restriction did not fail to discern its effect on veterans preference. Senator Burton, for example, stated that the termination of civil service examinations for attorneys would "do away with veterans' preference." 90 CONGRESSIONAL RECORD 2660–61 (1944). Although we agree with Senator Burton insofar as the ban on examination of attorneys denies the ability to impose a numerical rating system, we do not agree that implementation of the Veterans Preference Act is possible without such a system.

## II. The Department's Present Attorney-Hiring Procedures

The Department routinely applies the Veterans Preference Act in a meaningful fashion to attorney-hiring. All Justice Department employment applications ask whether the applicant is claiming veterans preference. That an applicant is a preference eligible is weighed as a

---

[8] The reference to the "Legal Examining Unit of the Commission" rather than the Board of Legal Examiners was occasioned by Exec. Order No. 9358, which vested the power of the Board in the Commission. Some Members of Congress had questioned whether the Board should be continued absent specific legislation. Thus, Exec. Order No. 9358 (1943), transferred the Board's authority to the Commission "[p]ending action by the Congress with respect to the continuance of the Board."

[9] It might be argued that OPM would not be imposing selection procedures if it merely required that agencies establish their own procedures. However, if OPM purports to possess the power of approval or rejection of such procedures, this would be tantamount to its imposition of selection procedures for attorneys.

positive factor in the Department's attorney-hiring program,[10] and the veteran is often selected over other attorney applicants. When the veteran's other qualifications place him or her in close competition, the veteran is preferred over other applicants with substantially equal qualifications.

This procedure is consistent with the application of the Veterans Preference Act in regard to attorney-hiring since 1941. As stated above, Executive Order No. 8743, in prohibiting an attorney-rating system, created a situation in which veterans preference could be implemented only by considering it positively in the employment decision. Congress, in response to the Executive order, rather than requiring a rating system, further restricted Commission control over attorney selection by barring the Commission from examining attorneys even to determine minimum qualifications. Thus, Congress implicitly sanctioned the implementation of the Veterans Preference Act with regard to attorney-hiring by use of a procedure such as ours.

We believe that our attorney-hiring procedure gives full effect to the Veterans Preference Act. OPM may not require the Department to implement a numerical-rating system, since this is a form of civil service examination that OPM is prohibited by its appropriation restriction from requiring.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[10] The Department is experimenting with a numerical rating system in its Honor Program that is geared toward the hiring of attorneys directly out of law school and accounts for approximately 15 percent of the Department's attorney recruitment. In this experimental program, veterans do receive additional rating points. In this connection it should be noted that, while OPM is barred by its appropriation legislation from implementing attorney-examination systems, this bar does not extend to other agencies, not similarly restricted, that might wish to implement or experiment with rating or other examining systems in their own attorney-hiring procedures.